Case number 417-0740, Stahl v. Decatur Memorial Hospital. For the appellant, we have Mr. Moran, is that correct? That's correct. Okay, sorry. And Mr. Toth? Toth, Your Honor. Mr. Toth. I have with my associates. Okay, all right. You may proceed, Mr. Moran. Thank you, Your Honor. May it please the Court and Counsel. This is a slip and fall case. Happened on October 5th, 2012 at Decatur Memorial Hospital when my client, Mr. Daniel Stahl, who is a farmer in Macon County, was rushing to see who he thought was at the hospital. His father-in-law walked over a parking lot on an upper level that was covered with puddles, didn't slip and fall, took a short embankment down. There were no signs saying he couldn't take that embankment down. He had been there before, taken the same path. It was the clearest path to the door of the hospital. On the lower level of the parking lot, he stepped over the curb, took a couple of steps in a puddle, and suddenly his feet flew out from under him. He was completely clean and dry. When that happened, he landed on his head, neck, and back. When he got up, he was covered with mud on his entire backside from the top of his hat to his clothes. We have pictures taken 10 to 15 minutes after the slip and fall that show the area where my client fell. It shows the mud caked onto my client's legs. In this case, the circuit court entered summary judgment for the hospital in this instance. When you look at the law of summary judgment, you see some of the most emphatic language I think we see on appeals. It starts out, almost every telecourt case says that summary judgment is a drastic means of disposing of litigation. As a result, the movement needs to show a clear right to judgment that is free from doubt. The facts are construed strictly against the movement and liberally in face of a non-movement. Then the most emphatic language of all, on appeal, motions for summary judgment are decided on a de novo basis by this court. It's the most liberal standard that there is. We're not looking at manifest weight. We're not looking at abuse of discretion. Everybody gets to put their trial court hat back on and go back to the beginning and is not bound by any of the findings of the circuit court. In this case, we believe that if you look at all of the facts here, in a light most favorable to Mr. Stahl, you see there are several areas where there are material issues  So in this case, we're requesting that the appellate court reverse the decision of the circuit court, in this instance, granting summary judgment to the defendant and remanding this case back to the trial court. Both the hospital and the trial court, in this instance, basically relied on four different arguments why they believe that summary judgment was appropriate. The first element is proximate cause. Both the trial court and the defendant argued in this case that Mr. Stahl cannot identify what he slipped and fell on in this instance. His testimony at his deposition was that he saw the puddle that he stepped into. He did not see that there was mud under the puddle. He took a couple of steps in the puddle and that's when his feet flew out from under him. It's very important that when he got up, after being completely clean, he was covered with mud on his entire back. He stated several times during his deposition that he assumed that he had slipped and fallen  Testified he's a farmer. He testified he's walking on mud all the time, that he knows what it feels like when you slip on mud. And here, in this instance, he said, I assumed. He said, I never saw it. I didn't willingly step into a mud puddle or a puddle that had mud underneath the surface of that puddle, but that when he got up, he believed that the cause of his fall was that he was slipping on mud. If you look at the case law, while the defendant cites the Kimbrough and the Richardson cases, we believe that the most relevant case is the Newsom-Bogan case. In Newsom-Bogan, a woman was eating lunch at a Wendy's restaurant. She was finished. She picked up her tray. She was walking to the trash container. When she got to the trash container, she didn't see anything on the floor but her legs, much like Mr. Stahl, slipped out from under her and she landed on her backside. When she went to get up, she noticed that her hands, which had hit the ground, were greasy. She said she couldn't smell grease. She couldn't see grease. But she assumed, because of the grease on her hands, that that's what she had slipped on in this instance. In that case, the appellate court reversed a summary judgment entry on behalf of the defendant, Wendy's, and remanded the matter for trial because it found that there were material issues of fact that needed to be tried by a jury. Again, the defendant cites two cases. The first one is the Kimbrough case. It was a jewel. A woman slipped on a ramp and she repeatedly testified during her deposition that she had no idea what she had slipped and fallen on. No idea at all. Just that it had to be something that was negligent on behalf of the Jewel food store. The second case was the Richardson case. This gentleman slipped on an unknown liquid on a Walgreens floor. He wasn't covered with water. When an employee from Walgreens went to look at the area, he could find no water. He could find no slippery substance. Nothing that could explain his fall, though he said he presumed, because it was snowing outside, that there was water on the floor that he slipped on. In this case, we have actual pictures of the date in question, and I attached them in the appendix. Appendix A43 is one of those pictures where you can see that mud has washed over a curb and has collected by that parking lot. Where did the trial court err in concluding that this was an open and obvious condition and therefore the duty of the hospital was lessened? Again, if you look at the law of open and obvious, we're almost always looking at fire, height, or bodies of water. A puddle on an asphalt sidewalk or a parking lot, in my research, has never been found to be a body of water or an open and obvious hazard. Again, in this case, open and obvious means a person with reasonable prudence should look at it and say, nope, I'm not going there because it's dangerous. In this circumstance, what we had was a puddle on an asphalt parking lot. If that was the case, that that was an open and obvious hazard, the person parked in the car that's shown in the pictures from the date of the accident could not have gotten out of their car because they would have stepped into an open and obvious danger. In this case, my client walked across the upper part of the parking lot. He testified, and nobody has contradicted this, that he walked through several puddles, didn't slip, nothing was slippery underneath those puddles. What about the embankment that he went down instead of taking the sidewalk? What about that embankment that he took down on the way down to where he eventually slipped? Well, his testimony was that he had been to that hospital emergency room several times over the years prior to the date he slipped and fell. He testified that he took the most direct course to the door of the emergency room, which is reasonably foreseeable when you have an emergency room and you have people either visiting them themselves or going to see a loved one that's there in the hospital. There were no signs that said, don't step on the grass. When he went down, he testified that he was careful, that he saw other people take that same route that day, stepping over it, and when he talked to the guard of the hospital that day, she didn't say, don't go back up this way or go take the sidewalk. He turned around and went the same way back. Nobody stopped him. While that may be an issue for a jury to decide whether it was reasonable in this instance for summary judgment, again, with all of the facts construed most liberally in favor of Mr. Stahl, it's just not a circumstance where summary judgment should be entered. An issue in this case was the trial court striking of some paragraphs of your client's affidavit in opposition to most of the summary judgment. On page 32 of your brief, when you write that Mr. Stahl sufficiently laid out the relevant facts to support any conclusions he has made so his affidavit is not subject to being stricken or at least that portion of it, that seems to be inconsistent with what Rule 191 says. Namely, it doesn't matter whether you set forth sufficient facts to justify a conclusion. Your conclusions aren't justified any more in an affidavit than they would be if you were to testify at trial. The unfortunate thing is that the trial judge never specifically ruled on what he found was offensive in those paragraphs. My argument and response is that juries are allowed all the time to make inferences from undisputed facts. But the affiant isn't allowed to make the inference, nor is a witness allowed to. It seems to me, Judge, that I must have slipped on fill in the blank. Objection over sustained. You can't testify to that. It's the same thing in the affidavit, isn't it? So if it says slipped in mud, that part may be sufficiently stricken. But all of the other facts that are listed in those paragraphs, they're not just a conclusory paragraph that says I slipped in the mud. Every one of those paragraphs has tens of facts that are listed. Counsel, here's another thing that kind of mystifies me about this case, about the striking of some of these paragraphs from the affidavit. The witness is permitted to change his testimony. He's permitted to give a statement to somebody saying X and later on at trial say, no, I don't think it was X, it changed my mind. Y occurred instead. And subject to impeachment by the prior inconsistent statement, of course, but he can change his testimony. What happened here is the trial court says, no, you can't change your testimony of the facts because of the deposition. There's a doctrine that applies here. The doctrine is a judicial admission. Only if what someone has said before constitutes a judicial admission are you barred from changing your testimony. What's weird to me is that term of art appears nowhere in the court's order and nowhere in your brief and nowhere in the brief of the hospital. I don't, what's going on? We have this Chemiskey case or whatever cited which goes back 25 years as a case of body of law on what constitutes a judicial admission contrary to an evidentiary admission and all the rest of it, no one talks about that. I think maybe got lulled into arguing the Chemiskey, it's the Chemiluskey case. Chemiluskey, okay. Chemiluskey case. And in that case what happened was at a deposition the plaintiff testified he got pushed by a dog, then fell on the stairs and that's how he got injured. When it came to time for summary judgment and he submitted his affidavit, his story had changed completely and it was nothing to do with the dog, I slipped on the gravel and that's what caused my fall. There's also a site to the Wallace case where somebody in their deposition said yep, that's my signature on that document and then later said nope, that's not my signature, I don't recognize that. In this instance, luckily it's de novo so the court here can look at that issue about a judicial admission here in this case. Well, it's a little bit awkward for us to be doing this for the first time in appeal when you haven't said, by the way, there's certain standards of what to govern when a statement is a judicial admission and thereby the issue is barred from further discussion, the witness can't change his mind, such as a deliberate, clear, unequivocal statement by a party about a concrete fact within that party's knowledge, etc. You know, it's a little awkward for us to be doing this sort of spot thing, isn't it? Well, but again, you can rely on the facts in this case and the facts that they do create a genuine issue of material fact that a jury could look at and decide in this case with things like impeachment. If the defendant believes that they can impeach the witness with a prior inconsistent statement, they're wholly entitled to do that and can do that in a situation like this. Just looking at summary judgment, though, the drastic remedy of summary judgment and that there has to be free from doubt that the defendant is entitled to that judgment essentially as a matter of law. Nothing has been cited here by the defendant which gets them past that hump that there are questions. All you have to do is look at those pictures. They say that that mud was a natural accumulation of mud on the parking lot. Dust blowing turns into mud. If you look at those pictures, mud has obviously been there for a long time. It's thick. There's a heel print in it that shows that it's at least an inch deep. It's not a natural accumulation. Therefore, there's another issue in this case where a jury could look at those facts combined with all of the other facts and determine liability in this case. One of the things I always like to ask in a tort case, counsel, is what did the defendant do wrong? Well, that's interesting, too. There's testimony from the director of facilities, Wayne Longwell, that said, yep, we're really into safety at the hospital. We check every month. We have this detailed report. There are questions in that report that definitely would pick up something like a problem with the curb or mud and that they do these reports monthly. We do discovery on that. When don't they have reports? August, September, and October, three months, two months before and the month of the accident here. So it's very difficult for a plaintiff to prove that they had actual or constructive knowledge. So a jury's going to have to decide that by looking at the mud and determining if it was reasonable for them to leave that on the parking lot, that they should have seen that. It's our argument that looking at those pictures, it's clear what's going on, that it rains, the water washes the mud over the curb, mud goes on the asphalt parking lot, which we normally walk across and don't slip on, even if it's wet, and they could determine, after looking at the credibility of the witnesses, what happened to determine that they should have had constructive knowledge of that. And again, that's a material issue of fact that a trier of facts should be able to decide in an instance like this. So on all of these cases, my brief's pretty long for a case like this, but I think we've gone through a lot of the case law. There's not a single case that has been decided by either the trial court or the defendant that comes anywhere near the issues that happened in this case. Well, just one last, because I want to make sure I understand your thinking on this. Where did the trial court go wrong by concluding this was an open and obvious condition, and that your client willingly undertook the danger, or whatever it might have been, to walk through this area? My argument would be that if. We expand the law to that, that walking on a puddle in a parking lot that has no deep heel mark, if the mud is covered with water. Again, that was up next to the curb. My client was rushing to the emergency room to see his father-in-law, who he thought was there, and he stepped over that. That's not where he slipped. He slipped several steps into the parking lot when he couldn't see that there was water. The mud that you can see in those pictures is actually on the outside. It's on the curb, not in the puddle, and not in the place where he actually slipped. Again, as I said, there's a car parked there with its driver's door right next to the puddle where he fell. If we're going to say that's an open and obvious danger, the individual couldn't get out of their car without assuming the risk that they could slip and fall in an instance like this. Is that fair, though, when your client came down the embankment, the person pulling up in their car wouldn't necessarily be coming down the embankment? If there was some sign, if there was some policy that could be pointed to that says you can't walk across the grass. But the testimony, and again, nobody has contradicted this testimony that he did that several times in the past, that he saw other people do that on the past. On the day of the accident, an agent of the hospital who was on the security staff watched him do it, didn't turn him around from doing that. So again, all of those facts show that it was pretty much regular practice. And that if it was a regular practice and they believed that that was an unsafe condition, after stating that that's all we are about is safety, it would have been reasonable for them to do something, it would have been foreseeable that mud could wash over and go on a parking lot. So that duty would not be inappropriate or overburdensome in a case like this. Thank you, Counsel. You'll have additional time on your button. Mr. Cooke? May it please the Court? Counsel? Just briefly with respect to the facts in this case, it's clearly evident that this gentleman... I'm going to ask you to speak up just a little bit. Certainly. That mic is not going to make you louder. It just helps us in recording the argument. I apologize, Your Honor. Is this better? Yes. Thank you. It's clearly evident that this gentleman crossed over a grassy slope, an embankment. It was wet on a rainy day as he's trying to enter the emergency care center at the Kid Memorial Hospital, which I'll refer to as DMH here. He stepped over the curb and into a parking lot and traversed approximately the length of a car. He was walking through puddles. His shoe bottoms would have been wet and could have had mud on them. He testified clearly he didn't see any mud. He admitted he did not know what caused his fall that day. He fell specifically while walking through a puddle, and he assumed that mud was the cause of his fall because he was wet and dirty when he stood up. There are diagrams and photographs here included in the evidence and part of the record. The plaintiff's testimony was specifically that that diagram, he did not know when he made that, but it was after the fall. He also testified that... Why does that matter? Well, it matters because that's the basis of what the plaintiff is relying on to show that there was an accumulation of mud there on that date in question. So if he made the diagram a month later, that's different than if he made it a week later? Correct, because a month later doesn't reflect the conditions of the parking lot on the day of the fall. Well, a diagram is just a match of evidence, isn't it? Yes, but he includes on there specific areas where he claims that there was mud running across the event. Why did it go to weight instead of admissibility? It may very well go to weight, Your Honor. It may. However, he specifically testified that with this diagram and with his photographs, he did not know when he took them, but then in his affidavit stated it was years later after he took these. The first issue before the court is with respect to the trial court striking portions of the plaintiff's affidavit. Your Honor, in my discussion with counsel, Mr. Moran, aren't we talking about the claim that these statements are judicial admissions? Well, it's certainly looking at the Kimelewski case and also the Wallace v. Alexian Brothers case. It states that a party cannot use their affidavit to create a genuine issue of material fact to defeat a motion for summary judgment with statements which are contradictory to their sworn testimony. Once they give that sworn testimony in a deposition, they can't change it to avoid the consequences, which is exactly what happened here. The plaintiff has changed his testimony in his affidavit to avoid the consequences of the motion for summary judgment. There were four particular paragraphs which were stricken from the affidavit. Particularly, to start with, there was paragraph 8. Again, he makes contradictory statements in there that the diagram was accurate, it reflected the exact conditions on the date of the fall. Kimelewski was 26 years ago. There's been all kinds of discussions in case law and application of the doctrine of judicial admissions in context of summary judgment and other issues. I'm just wondering how this being a term of art, this wasn't discussed and we have none of this case law other than Kimelewski from 26 years ago and as if that were it. I think I understand. I believe that the parties in the court perhaps were just focusing on this particular narrow issue of the changing of testimony by way of the affidavit as a means to defeat or defend against the motion for summary judgment. What part of the affidavit was damaging in any way? Paragraph 8, paragraph 13, paragraph 14, and paragraph 15 were found, were stricken by the trial court because they were conclusory and self-serving, because they contained affirmance contradictory to the plaintiff's sworn testimony of this deposition and also attempted to create inferences of negligence which were based on speculation in and of itself. More particularly in paragraphs 8, 13, and 14, the plaintiff particularly concludes that Mudd was the cause of his fall, but he testified he did not know what caused his fall. Well, that would be conclusionary, but what about the, what portions of the paragraphs of his affidavit were damaging to you because they constituted a change from his deposition testimony and somehow were damaging? Well, it's damaging in the sense that the plaintiff attempts to create the genuine issue of material fact now with the affirmance in his... I'm sorry, maybe I'm not clear on my question. Something in the paragraphs of his, that you sought to have stricken of his affidavit were not just a claim, I guess, inconsistent with his deposition, but somehow damaging to your position. What were they? Well, the paragraphs in their entirety, because they were conclusory, because they were self-serving, because they were based on speculation. Well, all that, if that were true, wouldn't make any difference whether they were inconsistent with the deposition or not. Well, when the plaintiff attempts to create the genuine issue of material fact by changing his testimony, that's where the problem lies. How did he change his testimony in his paragraphs? What did he say in the paragraphs of the issue that was damaging to you? Sure. So what he specifically changed in his testimony in paragraph 8 was that the diagram was accurate and reflected the same exact conditions on the date of the fall. In his testimony, he said that he did not know when he created it and it did not reflect the conditions on the day of the fall. He put in paragraph 8 that there was dirt washing down onto the parking lot over the curb from the embankment, despite his testimony that he did not know whether there were areas of dirt coming over the curb of the embankment. He did not fall at the curb of the embankment. He was well beyond that area where he fell. He testified, or put in paragraph 8, that there was dirt present underneath this puddle of water at the time of his fall, yet he testified he did not know that there were areas of dirt. And again, that mud was the cause of his fall, despite his testimony not knowing what caused his fall. And that's essentially the same with paragraph 13 and 14. Paragraph 15, the plaintiff concludes that his injuries were the result of his fall and that DMH specifically engaged in negligent conduct which caused his injuries. Those are improper legal conclusions that he's put in his affidavit. And for those reasons, we believe that the trial court appropriately struck the plaintiff's affidavit in those four paragraphs and should be affirmed. The second issue was whether the trial court appropriately granted summary judgment in favor of DMH. There are four bases by which it did. The first is that the plaintiff could not prove the causation element of his negligence claim in this case. The Richardson and Kimbrough cases are relied on by the hospital here. The plaintiff certainly notes in his argument today and in his briefs the factual distinctions in these cases. However, the law is still valid. Those cases hold that if a party cannot identify the cause of their fall, they cannot prove the causation element of their negligence claim. And the plaintiff testified unequivocally in his deposition that he did not know the cause of his fall. He assumed that mud was the cause because he was wet and dirty when he got up  That's based on conjecture and speculation. It's an improper basis to establish liability. Both the Richardson and Kimbrough cases granted summary judgment for the same reasons. Both were dismissed for the assumptions of the plaintiff of not knowing what caused their fall. Nor can plaintiff use his affidavit, which was properly stricken, here to establish the cause of his fall. He can't create this genuine issue of material fact based on improper conclusions and statements which were contradictory to his sworn testimony. The second basis by which the trial court granted summary judgment was that the plaintiff could not prove that DMH created the condition which caused the fall or that DMH had actual or constructive knowledge of the condition which caused the fall. The hospital has relied on the issue case, which holds that the plaintiff has to prove that a fall was caused by a condition in, on, or related to the fall area and attributable to the defendant. That is, that the defendant was directly responsible for the condition, or the defendant had actual knowledge of the condition, knew of its presence, or that the defendant had constructive knowledge of the condition, that the condition was present for a period of time such that its presence would have been discovered in the exercise of ordinary care. The plaintiff points out Wayne Longwell's deposition testimony here and makes reference that there were no reports done of inspections of certain areas of the premises at the time of plaintiff's alleged fall. However, the evidence is different. The evidence is not that inspections were not done. The evidence is that there were no reports from that time frame. However, there are vendors and DMH personnel on site daily looking at the premises. The plaintiff's deposition testimony was clear that there's no evidence that DMH was directly responsible for any condition which caused his fall, and there's no evidence that DMH had actual or constructive knowledge of the condition which caused the fall. There's specifically no evidence that the parking lot and the embankment were in the same condition on the date of his fall, as plaintiff has depicted in his diagram and his photographs that he first testified he did not know when he took, and then later put in a vermin in his affidavit, were years after the fact. The third basis by which the trial court granted summary judgment was based on a natural accumulation. DMH relies on the Krywin and Webb cases to show that landowners have no duty to the accumulations of ice, snow, and water. The Ahmed case continues on with that and says that it's equally onerous to require a landowner to remove a natural accumulation of dirt from their property. Here there was a natural accumulation of water or dirt, and the rule on natural accumulation cases is much broader than just ice, snow, and water as evidenced by the Ahmed case. The parking lot was wet. It was a rainy day outside. There were puddles on the parking lot which the plaintiff walked through. That's a natural accumulation of water. Nothing prevented the plaintiff from walking through these puddles of water, and he fell while walking through a puddle of water. Also, this is an open-air parking lot where he claimed to have fell. That's open to the elements. Dust, dirt is going to accumulate naturally over the parking lot. You heard Mr. Moran's argument about how open and obvious condition doesn't apply here. What's your sense of that? We believe it does apply here. Specifically, the case law is that there's no duty with respect to an open and obvious danger here. An open and obvious condition is a condition where both the condition and risk are apparent to and recognized by a reasonable person exercising ordinary perception, intelligence, and judgment. Persons who encounter natural or open and obvious conditions will take care to avoid any danger inherent in such conditions as the open and obvious nature of such a condition confers warning. Again, the parking lot was wet. It was rainy out that day. There were puddles of water on the parking lot, which the plaintiff walked through and not around. He specifically chose to walk through those puddles. He chose to encounter the open and obvious nature of those, and by that... Do we need to be concerned or should the trial court have been concerned with options available other than the particular path he chose? Well, there was an option, which was addressed during the plaintiff's address briefly in the statement of facts by DMH here, that there is a concrete pathway that goes through the center of the parking lot, which the plaintiff did not take. Is that an important factor in the open and obvious analysis? Well, that would be an option for him to use, as opposed to choosing a potential danger and going through it. Mr. Moran argued that there's no case like this on point, but you heard the argument. Is there one? As far as open and obvious? Yes. I don't think particularly, other than the fact that the law is the same for many of these issues. Yes, it does apply to water, ice, snow, natural accumulations, bodies of water for that matter. Now, this isn't a body of water. It's clearly a small puddle of water that he chose to walk through. And by doing that, he chose to encounter any danger, which would have been posed by the puddle, or anything within it. And for that matter, he's done the same with choosing to traverse the embankment. So for these four reasons, the trial court properly granted summary judgment. There was no genuine issue of material fact on these four bases, and summary judgment was appropriate as a matter of law, and the trial court should be affirmed. Thank you, counsel. Any rebuttal? Yes, Your Honor. Thank you. First, on the open and obvious, Moran makes the rookie mistake of, in a brief, citing the testimony. But I think it's pretty relevant here. On page 7, I cite and I quote exactly what Mr. Stahl's testimony was about the embankment and the parking lot. He said, well, I got out of the car, and it had been raining, and it was wet everywhere, and I remember going across the embankment. I remember that because the grass was wet, so I took it slow across it. And then I was walking on past, you know, after I had gone on to the blacktop, and then next thing I know, there's water there, which there was lots of water puddles there. And I just was walking, and next thing I know, I went straight back. When I got up, I was just covered with mud. I was walking on the blacktop. I was walking by the cars where I actually fell. He didn't fall on the embankment. While the mud may have come from the embankment, his traversing the embankment is not what caused his fall here. He said, I was careful there, and I walked on the grass because it was wet. What about the alternative path I just asked counsel about that could have avoided the conditions that were present where your client walked? Again, there's no question that there was an alternative path, that there was this parkway. No signs pointing to it. Walk only here. But lots of other people, and there's experience. Both my client walking that way, his seeing other people walk that way, and the hospital's agent, a security guard, whose job it is to say, don't do that, that's not safe. Watch them do it, and didn't complain. Those are all facts, again, that a jury could look at and ascribe weight to it, but there's a genuine question of material fact there. In relation to the judicial admission, I have to admit, it's a fascinating question. Usually where you see this is in a complaint, the plaintiff says, the stoplight was red. The defendant admits in his answer, yes, the stoplight was red. And what the law says is that takes out of dispute the question of whether the stoplight was red or not, and the plaintiff doesn't have to present evidence in that regard, and the defendant can't show up and say, oh, wait a minute, wait a minute, I totally changed my story on that, especially as it has to do with summary judgment. In this case, the complaint says, I slipped on mud. If you read my client's deposition, he says it several times in support of that. So he never took that fact out of consideration. He can present evidence concerning that, and again, as the court pointed out, he could be impeached, did you say this, at your deposition. And that goes to weight, not whether there's a question of material fact. Therefore, in this case, even if you looked at it from that perspective, and not the simplistic one that obviously the trial court and the parties used, that it has to be a complete change, that's not a reason to say Mr. Stahl continues to lose in this case. There are facts here that need to be tried to a jury. A jury could reasonably find in favor of my client, so we would request that the court reverse the trial court and remand this for further proceedings. Thank you, counsel. We'll take the matter under advisement and be in recess at this time.